



FILED

Jul 14 2026, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

VoCare, Inc.,

*Appellant-Defendant*

v.

AGS Capital, LLC, *et al.*,

*Appellees-Plaintiffs*

---

July 14, 2026

Court of Appeals Case No.
25A-CC-2413

Appeal from the Hamilton Superior Court

The Honorable Michael A. Casati, Judge

Trial Court Cause No.
29D01-2406-CC-7062

---

**Opinion by Judge Scheele**
Judges Bailey and Vaidik concur.

**Scheele, Judge.**

## Case Summary

VoCare, Inc. (VoCare) appeals the trial court's order granting summary judgment in favor of Appellees, AGS Capital, LLC (AGS), Scott J. Weaver, as Trustee of the Scott J. Weaver Revocable Trust (Weaver), and Donald Woodley (collectively, the Investors).[1] We affirm.

## Facts and Procedural History

VoCare is a medical device company that was formed and incorporated in Indiana in 2009. In 2021, VoCare sought to raise up to $2,000,000 in capital by issuing convertible promissory notes to various investors. VoCare and the Investors executed such notes (Note or, collectively, Notes) as follows: (1) on June 23, 2021, Weaver executed a Note in the principal amount of $50,000; (2) on June 24, 2021, AGS executed a Note in the principal amount of $25,000; and (3) on July 1, 2021, Woodley executed a Note in the principal amount of $50,000. Each Note matured three years from the date of issuance, with annual interest of twelve percent accruing until the Note was paid in full. The Notes also included a Stock Purchase Warrant, giving the Investors an option to purchase VoCare shares at two dollars per share up to the purchase price of the

---

[1] The caption and body of the trial court's order reflect "Scott A. Weaver" as the trustee of the "Scott A. Weaver Revocable Trust." App. Vol. II p. 12. The party name on the docket for this appeal and the case below, *see* Cause No. 29D01-2406-CC-7062, reflect "Scott J. Weaver," and we use the same.

Note, in lieu of payment. The Warrants expired upon maturity of the Notes, and none of the Investors would exercise the option before maturity.

[3] On July 22, 2022, Weaver, Woodley, and the chairman of AGS, Alan Symons, sued several of VoCare's officers in the Marion County Commercial Court, alleging breach of fiduciary duties (the Commercial Court Case).[2] Shortly after, the Indiana Secretary of State Securities Division began investigating VoCare's securities transactions. On February 13, 2024, the Securities Commissioner issued a cease-and-desist order against VoCare and several of its officers. The order prohibited VoCare from "engaging in **any** act that violates the IUSA [Indiana Uniform Securities Act], Rules, and the Commissioner's Administrative Orders, including but not limited to the offer or sale of unregistered securities." App. Vol. IV p. 208 (emphasis in original).

[4] Weaver's and AGS's Notes matured respectively on June 23 and 24, 2024. On June 25, Weaver and AGS filed a complaint against VoCare in the Hamilton Superior Court, alleging breach of contract for failure to pay the Notes. After Woodley's Note matured on July 1, the Investors amended their complaint to add Woodley as a party. The Investors sought recovery of the principal amounts of the Notes plus interest and all fees associated with collection.

---

[2] This lawsuit, which is currently scheduled for a jury trial on November 16-20, 2026, is not the subject of this appeal. *See* Cause No. 49D01-2207-PL-024690.

On November 5, 2024, the Investors filed a motion for summary judgment. In support of their motion, the Investors designated the Notes and sworn declarations of debt from Weaver, Woodley, and Symons, on behalf of AGS. On January 6, 2025, VoCare responded to the Investors' summary judgment motion. VoCare designated the Notes; several pleadings and orders from the Commercial Court Case; the Securities Commissioner's cease-and-desist order; an affidavit of Mary Zappia, VoCare's senior counsel; and demand letters previously sent by the Investors.[3]

On September 4, 2025, following a hearing, the court granted the Investors' motion for summary judgment. The trial court ordered VoCare to pay each Investor the principal amount of the Notes plus interest accrued up to the date of the order. The court also awarded reimbursement of all fees and costs associated with enforcement of the Notes and post-judgment interest at a rate of eight percent. *See* App. Vol. II pp. 12-13. VoCare now appeals.

## Discussion and Decision

VoCare contends the trial court erred by granting summary judgment in favor of the Investors. "We review summary judgment de novo, applying the same standard as the trial court[.]" *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "The moving party bears the initial burden of making a prima facie showing

---

[3] The demand letters are dated May 9, 2024, and reflect the Investors' notice of acceleration and demand for payment due to VoCare's breach. VoCare contends it never received the letters. Nevertheless, the Investors pursued damages from the date of maturity of the Notes, not from the acceleration dates.

that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013) (internal quotations and citation omitted). "Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* Where "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment is proper. Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley*, 15 N.E.3d at 1003.

[8] We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Manley*, 992 N.E.2d at 673. Our review of a summary judgment is limited to those materials designated to the trial court. *Id*. "In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials." *Flannagan v. Lakeview Loan Servicing, LLC*, 184 N.E.3d 691, 695-96 (Ind. Ct. App. 2022) (citation omitted).

[9] To prevail on their motion for summary judgment on their breach of contract claim, the Investors needed to prove the existence of a contract, breach thereof, and damages. *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021) (providing the elements of a breach of contract). Because the Investors' designated evidence

established the existence of the Notes, VoCare's breach by non-payment, and the resulting damages, the Investors made a prima facie showing that they were entitled to judgment. Thus, the burden shifted to VoCare to come forward with evidence establishing a genuine issue of material fact.

## I. Illegality Defense

[10] On appeal, VoCare contends the Notes are negotiable instruments subject to the UCC and argues the Notes were sold as unregistered securities "in violation of the law." Appellant's Br. p. 15. VoCare thus asserts its obligation to pay the Notes "is nullified" by the illegality defense under Section 3-305 of the Uniform Commercial Code (UCC), codified at Indiana Code section 26-1-3.1-305(a)(1)(B), and, as such, summary judgment was erroneous. *Id.* at 19. The Investors argue that VoCare advances this issue for the first time on appeal, and it is waived.

[11] In its reply brief, VoCare does not deny that it did not assert a UCC defense before the trial court. Instead, VoCare asserts that the Investors have been on notice about the enforceability of the Notes "since they purchased their respective Notes" and since the Indiana Secretary of State "charged that VoCare violated securities laws[.]" Appellant's Reply Br. pp. 8, 9. VoCare further contends the Investors had sufficient notice of its void-under-the-UCC argument because it "intersects with its argument to the trial court that the Notes are void because of Investors' role in purchasing Notes with knowledge that the unregistered securities were noncompliant" with the Indiana Uniform Securities Act (IUSA). *Id.* at 10. We agree with the Investors.

"Waiver is a threshold issue because generally a party is precluded from presenting an argument or issue to Indiana appellate courts unless the party first raised that argument or issue to the trial court." *Thalheimer v. Halum*, 973 N.E.2d 1145, 1150 (Ind. Ct. App. 2012).

> This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. Consequently, an argument or issue not presented to the trial court is generally waived for appellate review.

*Id.* (quoting *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 651 (Ind. Ct. App. 2002) (citations omitted)).

We disagree with VoCare's contention that its UCC argument intersects with its arguments below sufficiently enough to put the Investors on notice. Below, VoCare argued that the Investors breached the Notes first because they "failed to accurately represent and warrant their knowledge of VoCare." App. Vol. IV p. 9. VoCare claimed the Investors either knew that VoCare did not file appropriate securities exemption forms or they failed to diligently discover the same; thus, VoCare claimed the Investors made fraudulent representations about its knowledge of VoCare, voiding the contracts. *See id.*

[14] The UCC argument VoCare now advances rests on a different legal theory. The UCC provides that the "right to enforce the obligation of a party to pay an instrument is subject to . . . a defense of the obligor based on . . . illegality of the transaction which, under other law, nullifies the obligation of the obligor[.]" Ind. Code § 26-1-3.1-305(a)(1)(B) (2010). It is apparent from the record that VoCare did not explicitly raise this defense below, either in its answer to the Investors' complaint, *see* App. Vol. II p. 192, or in opposition to the Investors' motion for summary judgment, *see* App. Vol. VI pp. 2-11.

[15] Moreover, the UCC theory would have required assertion of additional facts to support several legal conclusions, including that the Notes were negotiable instruments subject to Indiana Code chapter 26-1-3.1, that the Notes were indeed illegal under some other law, and that such illegality nullified VoCare's obligation to pay the Notes. As to the underlying theory of illegality, VoCare partly re-asserts that the Investors should have known the Notes violated securities laws. But VoCare's argument now rests on its assertion that "the Notes were sold to Investors—as has been alleged by the Securities Division—in violation of the law" and "the absence of strict compliance with [securities] exemption requirements nullifies the transaction[.]" Appellant's Br. pp. 15, 16. In other words, VoCare's theory on appeal is that its sale of the Notes was itself non-compliant with the IUSA, not merely that the Investors' actions contributed to the IUSA violation.

[16] In sum, VoCare's UCC defense not only requires proof of additional elements, but its underlying theory about why the Notes were void and illegal is different

from the argument it raised below. Thus, its new argument goes beyond a mere citation to a different statute which rests on the same legal elements and provides the same relief. *Cf. Collins Asset Grp., LLC v. Alialy*, 139 N.E.3d 712 (Ind. 2020) (holding appellant's argument about timeliness of complaint was not waived where it cited one statute of limitations before the trial court and a different statute with the same limitations period on appeal (citing *Moryl v. Ransone*, 4 N.E.3d 1133 (Ind. 2014) (no waiver where the newly cited statute addressed the same timeliness issue already before the court))). Accordingly, the Investors were not on notice of this argument, and the trial court had no opportunity to apply the UCC provisions to the designated evidence to determine whether this issue precluded summary judgment. *See Thalheimer*, 973 N.E.2d at 1150. VoCare has waived the UCC issue by raising it for the first time on appeal. *See id.*

[17] Even if we set aside VoCare's waiver—which we do not—VoCare's argument would fail on the merits. The argument operates on two assumptions: 1) that the Notes are negotiable instruments subject to Indiana Code chapter 26-1-3.1; and 2) that the Notes are void and unenforceable because they violate the IUSA (i.e., that they were illegally entered under a law other than the UCC). It is unlikely that VoCare could present a genuine issue of material fact as to the latter.

[18] The official comments to the UCC provide that "[i]llegality is most frequently a matter of gambling or usury, but may arise in other forms under a variety of statutes" as governed by local law. U.C.C. § 3-305 official cmt. 1 (2022). The

defense may be asserted against an instrument holder only if, under local law, the effect of illegality is to make the obligation entirely null and void. *Id.* But Indiana law has protected the holder's enforceability of a note issued in violation of securities laws for nearly a century. *See* Ind. Code § 23-19-5-9(a) (2013) (creating a cause of action for a purchaser of a security, where said security sale violated the IUSA, unless the purchaser knowingly participated in the violation); *e.g., Reinhart v. Boeck*, 918 N.E.2d 382, 400-01 (Ind. Ct. App. 2009) (affirming summary judgment in favor of a holder of unregistered securities that were sold in violation of the IUSA); *Hill v. Campbell*, 169 N.E. 865, 868 (Ind. Ct. App. 1930) (holding that a note given in security in violation of the "Blue Sky Law" of 1920 was not void and might be enforced by a holder in due course). Thus, the effect of VoCare's issuance of the Notes in violation of the IUSA did not automatically render them null and void. As such, the UCC illegality defense would likely have been unavailable to VoCare had it argued the issue before the trial court.

## II. Impossibility of Performance

VoCare also argues its repayment of the Notes became "impossible or impractical" and is, thus, excused. Appellant's Br. p. 20. Initially, the Investors note that VoCare fails to support its argument with relevant authority and does not even provide the essential elements of the impossibility doctrine. We agree and further note VoCare's attempt to argue impossibility as a defense under the UCC. *See id.* at 20. Again, VoCare did not raise any defense under the UCC below, and any argument based thereon is waived. VoCare also failed to raise

impossibility as a defense in its answer to the Investors' complaint. *See* App. Vol. II p. 192. However, VoCare argued common law impossibility in opposition to the Investors' motion for summary judgment and set forth the appropriate analysis in its reply brief; as such, this issue is sufficiently preserved for our review.

[20] Impossibility is an affirmative defense and "has been defined as 'where the performance of a contract becomes impossible, non-performance is excused, and no damages can be recovered.'" *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012) (quoting *Dove v. Rose Acre Farms, Inc.,* 434 N.E.2d 931, 935-36 (Ind. Ct. App. 1982)), *trans. denied, cert. denied.* "To invoke impossibility, one must demonstrate that performance is not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract." *Id.* (quotations and citations omitted). The circumstances creating the impossibility must have been "presumably unapprehended" and unpreventable by the obligor. *Ross Clinic, Inc. v. Tabion*, 419 N.E.2d 219, 223 (Ind. Ct. App. 1981).

[21] The only evidence VoCare put forth regarding its alleged impossibility was senior counsel Mary Zappia's affidavit. There, she stated:

> 14. The Cease-and-Desist Order prohibits VoCare from offering any securities for sale, making it impossible for VoCare to raise additional capital.

***

16. The Cease-and-Desist Order, along with the Securities Division investigation have resulted in challenges for VoCare's business and its ability to make a profit in its ordinary course of business.

17. The Commercial Court Lawsuit and the Securities Division's actions, both of which originate with the Plaintiffs, have taken up much of VoCare's time and have been detrimental to business.

App. Vol. IV pp. 183-84.

[22] On appeal, VoCare argues these difficulties, especially the cease-and-desist order, created an impossibility by an "act of law[.]" Appellant's Br. p. 17. VoCare points to no authority demonstrating that such an order is the type of act of law contemplated by the impossibility doctrine, and we find none. Moreover, the cease-and-desist order prevents VoCare from "engaging in **any** act that violates the IUSA, Rules, and the Commissioner's Administrative Orders, including but not limited to the offer or sale of unregistered securities." App. Vol. IV p. 208 (emphasis in original). VoCare has not provided any evidence that an act of the law restricted its ability to engage in other fundraising actions, particularly those that comply with the IUSA.

[23] In addition, VoCare fails to provide authority supporting its proposition that financial difficulties are the sort of events giving rise to impossibility. To the contrary, courts have observed that financial difficulties do not invoke impossibility. *See Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 728 (7th Cir. 2009) (observing the impossibility doctrine

differs from financial distress and never justifies failure to make a payment (citing Restatement (Second) of Contracts § 261 & cmt. d)). And VoCare does not allege its impossibility arose from an act of God or the loss or destruction of the subject-matter of the contract.

[24] VoCare has failed to present evidence demonstrating impossibility of performance. Because VoCare failed to raise a genuine issue of material fact, we affirm the trial court's entry of summary judgment in favor of the Investors.

[25] Affirmed.

Bailey, J., and Vaidik, J., concur.

ATTORNEYS FOR APPELLANT

Katherine M. Haire
Anthony L. Holton
Reminger Co., L.P.A.
Indianapolis, Indiana

Joseph S. Simms
Reminger Co., L.P.A.
Cleveland, Ohio

ATTORNEYS FOR APPELLEE

Jonathan D. Mattingly
Jeffrey N. Furminger
Mattingly Burke Cohen & Biederman LLP
Indianapolis, Indiana